**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

GARY J. FENDLEY,

              Plaintiff,

      v.

AMY KING, et al.,

              Defendants.

CIVIL ACTION NO.: 5:23-cv-85

---

## REPORT AND RECOMMENDATION

      Defendants Bannaman, Dennis, and Henderson filed a Motion to Dismiss.[1]  Doc. 22.

Plaintiff filed a Response in opposition.  Doc. 27.  Defendants filed a Reply.  Doc. 28.  For the

following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss,

**DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust available

administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of

dismissal and **CLOSE** this case.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to

appeal *in forma pauperis*.

---

[1]      Defendants Amy King, Amy Thurman, and Jane Doe have not joined the Motion, nor have these Defendants appeared in this case.  I directed Plaintiff to provide information regarding Jane Doe's identity to assist the United States Marshals Service's efforts to serve Doe and warned Plaintiff his failure to do so could result in the dismissal of his claims against Defendant Doe.  Doc. 11 at 1 n.1.  Plaintiff has not provided any additional information about Jane Doe.  The Marshals Service sent Defendant King a request for waiver of service, which was returned executed, but King has not appeared in the case or been personally served.  Doc. 14.  The Marshals Service sent Defendant Thurman a request for waiver of service, which was apparently received by Thurman, but Thurman did not return the waiver, been personally served, or appeared in the case.  Doc. 15.  Ultimately, Plaintiff's claims against Defendants King, Thurman, and Doe are identical to his claims against Defendants Bannaman, Dennis, and Henderson.  As a result, all of Plaintiff's claims against all Defendants fail for the same reason: Plaintiff failed to exhaust administrative remedies before filing this suit.  See Wright v. Ga. Dep't of Corr., 820 F. App'x 841, 843 (11th Cir. 2020) ("Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court.") (citation omitted).  Therefore, I recommend the case be dismissed in its entirety.

**BACKGROUND**

Plaintiff filed his Complaint on September 1, 2023, alleging Eighth Amendment claims under 42 U.S.C. § 1983.  Plaintiff contends that Defendants acted with deliberate indifference when they ignored his requests for help when experiencing tooth pain after an extraction. Doc. 1.  The Court conducted a frivolity screening under 28 U.S.C. § 1915A and directed service of Plaintiff's claims on May 15, 2024.  Doc. 11.

Plaintiff's claims arise from a tooth extraction he underwent some time between January 20, 2022 and January 25, 2022.  Doc. 1 at 8.  On January 28, 2022, Plaintiff informed Defendant Dennis that he was experiencing pain because of the operation and requested medical attention. Defendant Dennis declined to help, stating he "had more important things to handle."  Id. at 9. On January 30, 2022, Plaintiff submitted a "sick call" to prison staff and spoke with Defendant Amy Thurman, who stated she would help but never did.  Id.  Defendant spoke with Defendant Henderson on the same day, but Defendant Henderson also refused to help.[2]  Id. at 10.  On February 1, 2022, Plaintiff asked Defendant Amy King for medical attention, to no avail.  Id. On February 2, 2022, Plaintiff submitted another sick call request and informed Defendant Bannaman of his medical need, but Defendant Bannaman "did nothing."  Id. at 10–11.  On February 5, 2022, Plaintiff submitted another sick call request but does not recall with whom he spoke.  Id. at 11. On February 7, 2022, Plaintiff submitted another sick call, but nothing apparently came of it.  Id. at 12.

On February 8, 2022, Plaintiff was transferred to the Georgia Department of Corrections' Special Management Unit ("SMU") prison.  Once there, Plaintiff informed staff of his tooth pain

---

[2]      In the Complaint, Plaintiff includes "Officer Thrift" as a Defendant.  Defendant "Tiffany Thrift Henderson" and others filed the instant Motion.  Any reference I make to "Defendant Henderson" in this Report and Recommendation is intended to relate to the same individual Plaintiff identifies as "Officer Thrift" in the Complaint.

and was seen by a dentist who determined Plaintiff had developed an infection.  <u>Id.</u>  Plaintiff's allegations are somewhat unclear, but it appears Plaintiff alleges he intended to file a grievance before he was transferred to the SMU prison "but was unable to submit it due to no counselors being available who by rule are the only prison officials who can receive and process inmate grievances."  <u>Id.</u>

At another point in his Complaint, Plaintiff states he filed grievances at both Ware State Prison and SMU, though he does not provide the dates or other identifying information about those grievances.  <u>Id.</u> at 14.  Plaintiff states, in those grievances, he explained he had a tooth extraction at Ware, it became infected, he turned in medical request forms, and asked officers for help and received none.  Plaintiff claims nobody ever responded to his grievances, he had to request a copy of his grievance history to obtain the grievance number, and only then was able to file an appeal to the Georgia Department of Corrections' Central Office.  Plaintiff claims he never received any response to that appeal.  <u>Id.</u>

Defendants filed a Motion to Dismiss on July 23, 2024, arguing Plaintiff failed to exhaust administrative remedies.  Doc. 22.  Plaintiff filed a Response to Defendants' Motion to Dismiss, claiming he did exhaust by filing a grievance as soon as he was able and by filing an appeal. Doc. 27.

## DISCUSSION

Defendants argue Plaintiff's Complaint should be dismissed because Plaintiff did not exhaust his administrative remedies prior to filing the Complaint.  Doc. 22.  Specifically, Defendants contest Plaintiff's allegation that counselors at Ware State Prison were unavailable to accept grievances at the relevant times.  Doc. 22-1 at 7.  Defendants acknowledge that Plaintiff filed a grievance on February 11, 2022, but state the grievance does not relate to Plaintiff's

claims in this lawsuit.  Id.  Defendants also contend Plaintiff never filed an appeal of the February 11, 2022 grievance.  Id. at 8.

Plaintiff opposes Defendants' Motion, claiming he was prevented from properly filing grievances at Ware State Prison and, when he filed a grievance at the Special Management Unit, the Warden/Superintendent did not respond.  Doc. 27 at 5–6.  Plaintiff also claims he was not given a grievance appeal form until February 8, 2023.  Id. at 6.

## I.    Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000).  The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.

Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit

before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.    Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 642. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding

the inmate-plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust."  Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust."  Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings."  Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

III.    **Applying <u>Turner</u>**

A.    **The Georgia Department of Corrections' ("GDC") Administrative Remedies**

The GDC's Administrative Remedies procedures establishes the procedures for submitting and appealing grievances.[3]  Doc. 22-2 at 1.  The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02.  Doc. 22-3.  Under SOP 227.02, the grievance procedure applies to "any condition, policy, procedure, or action or lack thereof that personally affects the Offender," excluding certain designated "Non-Grievable Issues."  <u>Id.</u> at 4.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal.  <u>Id.</u> at 8.  Under Step 1, the inmate must submit a completed Grievance Form within 10 calendar days of "the date the inmate knew, or should have known, of the facts giving rise to the grievance."  <u>Id.</u>  Then, the inmate may appeal the decision to the GDC Central Office under three circumstances: (1) after the inmate receives the Warden's rejection of the grievance; (2) after the inmate receives the Warden's decision on the grievance; or (3) after the time allotted for the Warden to decide has expired.  <u>Id.</u> at 14.  The SOP provides a 40-day period for the Warden's response to be given to the inmate, with the possibility provided for a 10-day extension.  <u>Id.</u> at 11.  An appeal must be filed within seven days of an inmate receiving the Warden's response.  <u>Id.</u> at 14.

---

[3]    Plaintiff's claims arose at Ware State Prison, but he submitted the grievance relevant to this Motion after he was transferred to the SMU.  Doc. 22-4.  Former Ware State Prison Grievance Coordinator Kimberly Rowe stated in a declaration the GDC SOP applies statewide and "offenders may file grievances from any Georgia Department of Corrections housing placement including administrative segregation."  Doc. 22-2 at 1, 4–5.  Thus, the relevant procedures are the same at both Ware State Prison and the SMU.

**B.      Plaintiff Did Not Exhaust Available Administrative Remedies**

*1.      Plaintiff's claims survive under <u>Turner</u> step one.*

At step one under <u>Turner</u>, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true." <u>Turner</u>, 541 F.3d at 1080–82.

Defendants argue that Plaintiff failed to exhaust administrative remedies by not submitting a grievance at Ware State Prison when he could have. Doc. 22-1 at 7. While it is undisputed Plaintiff submitted a grievance at SMU on February 11, 2022, Defendants argue this grievance does not allege any wrongdoing by Defendants. <u>Id.</u> Finally, Defendants claim Plaintiff never appealed the denial of this grievance. <u>Id.</u> at 8.

Plaintiff disputes Defendants' allegations. Plaintiff states he was unable to submit a grievance while at Ware State Prison because counselors were not available to accept the grievance. Doc. 27 at 4. Plaintiff also disputes Defendants' characterization of his February 11, 2022 grievance. Plaintiff states he submitted the grievance in direct response to the alleged Eighth Amendment violations at Ware State Prison at issue in the Complaint. <u>Id.</u> As to an appeal, Plaintiff states the Warden/Superintendent at SMU never responded to his grievance, in violation of the SOP, and the grievance coordinator at SMU did not provide him with an appeal form until February 8, 2023, after which he filed an appeal. <u>Id.</u> at 6.

Plaintiff's allegations and Defendants' allegations clearly conflict. Defendants assert Plaintiff could have filed a grievance at Ware State Prison, while Plaintiff states there was no way for him to do so. Defendants claim Plaintiff failed to allege in the February 11, 2022 grievance any wrongdoing for which he seeks judicial redress, while Plaintiff claims he did. Finally, Defendants claim the warden responded to the grievance, but Plaintiff never appealed. Plaintiff states there was no response and that he did appeal after much institutional delay. There

is a genuine issue of material fact, and—at step one under <u>Turner</u>—the Court must take

Plaintiff's allegations as true.  Looking solely at Plaintiff's Response, his allegations are enough

to survive a motion to dismiss for failure to exhaust his administrative remedies under the first

prong of the <u>Turner</u> test.

**2.    *Plaintiff's claims should be dismissed under <u>Turner</u> step two.***

The parties' filings implicate a factual question.  Specifically, the parties appear to

present three factual disputes.  First, the parties dispute whether Plaintiff could have filed a

grievance at Ware State Prison.  Second, the parties disagree about whether Plaintiff's February

11, 2022 grievance applied to the facts at issue in the Complaint.  Finally, the parties dispute

whether Plaintiff properly appealed the denial of his grievance.  In support of their contentions,

Defendants provide: a declaration from Kimberly Lowe, the grievance coordinator at Ware State

Prison during the relevant timeframe; the SOP itself; Plaintiff's grievance history; Plaintiff's

movement history; and Grievance Number 336487, which Plaintiff submitted on February 11,

2022.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often

pose problems for the district courts."  <u>Womack v. Sikes</u>, No. CV 307-042, 2008 WL 4104148,

at *5 (S.D. Ga. Sept. 4, 2008).  Nevertheless, a presiding judge may act as a factfinder in

resolving whether an inmate has exhausted his non-judicial remedies.  <u>Bryant</u>, 530 F.3d at 1374

(citing <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).  Similarly, the Supreme

Court has explained "discredited testimony" cannot be relied upon to resist summary judgment.

<u>See</u> <u>Womack</u>, 2008 WL 4104148 at *5 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

256–57 (1986)).

Failure to exhaust is an affirmative defense that, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue"). Here, both parties have submitted argument or evidence on the issue of exhaustion. Therefore, the parties have had a sufficient opportunity to develop the record.

(a)    *Plaintiff's failure to file a grievance at Ware State Prison.*

Defendants claim Plaintiff should have filed a grievance while still housed at Ware State Prison. In support, grievance coordinator Kimberly Lowe, in her declaration, states grievance forms were available in all dormitories and Plaintiff could have obtained a blank form from a counselor or dorm office. Ms. Lowe further states that counselors were available and made weekly rounds in January and February 2022. Doc. 22-2 at 4. Plaintiff does not present evidence on this point, but states in his Response that there were no counselors present to whom he could submit a grievance. The record before the Court shows that Plaintiff potentially could have filed a grievance while housed at Ware State Prison, but that fact is largely immaterial. Plaintiff filed a grievance at the SMU on February 11, 2022. The SOP gives inmates 10 calendar days "from the date the Offender knew, or should have known, of the facts giving rise to the grievance," after which the inmate must demonstrate good cause. Doc. 22-3 at 8. Plaintiff's claims concern events that occurred between January 28, 2022 and February 7, 2022, so even if Plaintiff could not have filed a grievance at Ware State Prison, he was able to file one at the SMU and did so within the window permitted by the SOP or very close to within the window. Doc. 1. As such, whether Plaintiff could or could not submit a grievance at Ware State Prison is not dispositive to whether Plaintiff exhausted his administrative remedies.

(b)    *Plaintiff's February 11, 2022 grievance.*

Defendants state Plaintiff's February 11, 2022 grievance did not allege any wrongdoing on their part but, rather, concerned medications Plaintiff claimed he had not yet received while housed at SMU. Doc. 22-1 at 7. As a result, Defendants argue the February 11, 2022 grievance cannot provide a basis for Plaintiff's exhaustion of administrative remedies.

In the February 11, 2022 grievance, Plaintiff states was given "antibiotics & pain medications" when he arrived at SMU on February 7, 2022, but he had "not received any meds

that the doctor ordered for the infection in [his] mouth." Doc. 22-6. Plaintiff requested a "follow-up to make sure that this infection hasn't gotten any worse" and to receive medications for his condition." Id. Plaintiff also stated, however, staff at Ware State Prison "did a very poor job at making sure my well being was taken care of . . . . This has been an ongoing situation and I haven't received the proper medical treatment needed." Id. In his requested relief, Plaintiff asked for staff involved in the allegations to "have money taken from" their pay for failure to perform their duties.

Plaintiff's February 11, 2022 grievance sufficiently describes his concerns about the lack of treatment for the pain related to his tooth extraction. Although Plaintiff highlights the lack of medication, he also complains about "the very poor" care he received at Ware State Prison, and he explained he had not "received the proper medical treatment needed." Doc. 22-6. Plaintiff also expressly requested "follow up" treatment. Thus, Plaintiff's February 11, 2022 grievance sufficiently notified prison officials about the nature of his complaints, and Plaintiff's complaints in the grievance are consistent with the claims he now asserts in this action.

*(c)     Plaintiff failed to appeal the denial of his grievance.*

Defendants argue that Plaintiff failed to appeal the denial of the February 11, 2022 grievance. Defendants provide as evidence Plaintiff's grievance history, which shows Plaintiff's February 11, 2022 grievance was denied on August 3, 2022. Defendants contend there is no evidence Plaintiff ever appealed the denial. Plaintiff makes arguments in response, but the arguments ultimately fail.

First, Plaintiff contends the warden at the SMU failed to respond to his grievance. Doc. 27 at 5. The record contradicts Plaintiff's contention. The record shows the warden did

respond to Plaintiff's grievance, but not until August 3, 2022, which was approximately six months after Plaintiff submitted it.

The SOP gives the Warden/Superintendent 40 days, with the possibility of a 10-day extension, to respond. Doc. 22-3 at 11. The SOP states an inmate may file an appeal after "[t]he time allowed for the Warden's/Superintendent's decision to be given to the Offender has expired." Id. at 14. Thus, Plaintiff could have filed his appeal 40 days after he submitted the February 11, 2022 grievance, even though the warden had not yet responded. To the extent Plaintiff contends he was not required to comply with the SOP because the warden did not respond within the permitted time, Plaintiff is incorrect. The warden's failure to respond to Plaintiff's grievance within the time set in the SOP does not mean Plaintiff was excused from complying with the SOP. See Garcia v. Obasi, No. 21-12919, 2022 WL 669611 (11th Cir. Mar. 7, 2022) (finding warden's failure to provide a timely response to plaintiff "did not make a central office appeal unavailable . . . because [plaintiff] had the option to appeal after the time for the warden's response expired"). Thus, Plaintiff was required to submit his appeal once the warden's response time had run.

In his Response, Plaintiff indicates that he had to ask repeatedly about the status of the February 11, 2022 grievance. Doc. 27 at 5. Plaintiff never says when he learned the grievance had been denied. Instead, Plaintiff states, "On 2/8/23, Plaintiff was given a Grievance Appeal form, in which, Plaintiff filed an appeal. It took the Grievance Coordinate over (1) year to respond to Plaintiff's Grievance and issue Plaintiff a Grievance Appeal Form." Doc. 27 at 6. Considering the evidence as a whole, the record indicates that Plaintiff learned his February 11, 2022 grievance was denied at or near the time of the denial, namely, August 3, 2022. See Doc. 22-2 at 5 (Ms. Lowe's declaration stating Plaintiff "was notified of the Warden's [denial of the

February 11, 2022 grievance] on August 3, 2022 . . . ."); Doc. 22-6 (grievance form stating that Plaintiff was notified of the denial on August 3, 2022).  As a result, Plaintiff should have—at a minimum—appealed the denial within seven days of the denial, which he plainly did not do.

Even if the Court were to construe Plaintiff's vague allegations in his Response to mean he did not learn about the denial until February 8, 2023 (the date Plaintiff states he received an appeal form), the record would still support the conclusion Plaintiff did not exhaust his administrative remedies.  Plaintiff states clearly he was aware of the denial of his grievance on February 8, 2023 and, on that date, he was provided with appeal form.  However, there is no evidence Plaintiff actually attempted to appeal the denial after February 8, 2023.  Ms. Lowe states in her declaration that Plaintiff did not appeal the denial of his grievance and Plaintiff's grievance history contains no record that Plaintiff appealed the denial.  Plaintiff, for his part, merely states he "was given a Grievance Appeal form, in which, Plaintiff filed an appeal." Doc. 27 at 6.  Plaintiff provides no evidence of any appeal.[4]  Plaintiff also fails provide any details about the supposed appeal, such as when he submitted the appeal, where he was when it was submitted, or to whom he submitted the appeal.  Plaintiff's vague allegation, unsupported by any evidence, is contradicted by the evidence Defendants presented.  Thus, to the extent there is any factual dispute here, I find Plaintiff did not appeal the denial of his February 11, 2022 grievance at any time.  As a result, Plaintiff failed to exhaust available administrative remedies.

In sum, Defendants have carried their burden of showing Plaintiff did not exhaust his available administrative remedies.  Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint for failure

---

[4]    Plaintiff included an exhibit with his Response, but the exhibit only shows the denial of the February 11, 2022 grievance, which is not in dispute.  Doc. 27 at 8.  Plaintiff's exhibit does not demonstrate he ever appealed the denial.

to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case.

**IV.     Leave to Appeal *in Forma Pauperis***

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, I **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case. I also **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 25th day of February, 2025.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA